May it please the Court, I'm Larry Robbins. I represent Appellant Charles McCall. I want to talk about the two instructional issues that we briefed on appeal. The instruction on reckless disregard that I submit we were entitled to but didn't get, and the instruction on reckless disregard that we got instead and which I respectfully suggest is mistaken. Let me talk first about the instruction that I think we were entitled to and did not get. When Mr. McCall was tried the first time before Judge Jenkins in 2006, his defense counsel stood up in front of the jury and made a crucial argument. He said, when we talk about willfulness, quote, we are not talking about negligence or gross negligence or inexcusable negligence. We are talking about deliberate conduct. The reason counsel was able to make that argument in 2006 was that he had fought for, McCall had fought for and prevailed on, an instruction on reckless disregard that supported that key line of defense. And in granting that instruction, Judge Jenkins recognized what is manifest in the record, that the crux of this case was about recklessness. And that first jury acquitted of conspiracy and convicted on nothing. But counsel could not make that argument when the case was retried. Although even today the government finds no fault in the instruction we asked for, and after all, how could it? It's the standard instruction in civil securities fraud cases in every court in this circuit and across the country, for that matter. Although they find no fault with this instruction, the district judge denied Mr. McCall's request to give it again. Scalia. Excuse me. Didn't we say in the Deering case that even if that instruction is not given in a civil context, it's not necessarily error? Well, no. In the Deering case, an instruction on reckless disregard, Your Honor, was given. And it was not wrong. What the Court said in Deering was that because it was tethered, as the Court put it, to a particular element of the offense and was otherwise correct, it was not error to give it. Nobody asked in Deering for an explication of what exactly reckless disregard is. And so the question was never presented. And as a matter of fact, as this case comes to this Court today, although reckless disregard has been given as an instruction in criminal securities cases, in the Ninth Circuit specifically, no panel, no panel of this Court has ever given a criminal definition of what it is. But in civil cases, one after another after another, the precise instruction that we asked for and got from Judge Jenkins in 2006 was denied in this case. And I can't believe it. However, counsel, I hear your argument, and I hear where you're going. But I guess, on what basis do I review this instruction or this, if you will, failure to give an instruction? I mean, my basis is the situation, because I'm not now on the district court. I'm on the appellate court. The district court is there. He's heard the evidence. He knows what instructions he wants to give. On what basis do I judge his decisions? Well, in this particular case, Your Honor, I submit that because this instruction was fought for, fully litigated by both sides. Well, but that has nothing to do with it. I don't find any rule that says, yes, you've had it in another trial. You've got to have it in this one. All I have is I have a set of guidelines, and I'm asking you for those guidelines, because you're on appeal now. Apply those guidelines to this instruction or to the failure to give an instruction. Well, ordinarily, the decision whether to give an instruction or not is subject to an abuse of discretion standard. That's the holding of Chief Judge Kaczynski's decision in U.S. against Heredia. But there is also a parallel line of cases that informs the question of discretion, and that is the law of the case doctrine, Judge Smith. Once again, you're trying to get out from under what I'm asking you. I asked you what it was. You got to abuse of discretion. So now, what does the judge – what do I have to look at that the judge really looks at? Doesn't they look – I review the instructions as a whole, right? True. And I review the instructions as an adequate guide to the jury. No question. And I review them whether they fairly cover the issues presented. Indeed. And if I give him an abuse of discretion in deciding what to do in these situations, you're suggesting that what he gave is abusive. Well, I'm suggesting that it is abusive in two distinct senses, and I want to be clear about the difference. We were entitled to the instruction that we got the first time under law of the case principles in this circuit, which has a remarkably robust law of the case body of law. But would that not be subject to harmless error analysis in any event? Let's assume you're correct. I read Alexander, perhaps, to support your position that you were entitled to a law of the case charge. But we have, you know, Sam says that it's subject to harmless error. Isn't that not what we're talking about here? It is subject to harmless error. Although, I would suggest, Your Honor, that to the extent that it states our theory of defense, cases like United States v. Rahm apply a per se reversible error. But I agree with you. I agree with you that to the extent we're talking about law of the case, it is subject to harmless error, and I'm delighted to talk about why it is manifestly harmless error under the United States v. Nieder and its progeny. I'm sorry, Your Honor? Not manifestly harmless error. You're going to say harmful. I'm sorry. I just want to make sure the record is clear on which side you are. Yes. Because you're going to go back and say that's the side, but I have to tell you, you're not joining the other side. Indeed. I think I bollocks double negatives. In any event, I'm the law of the case. Judge Block, I am delighted to talk about why it is not harmless error. I want to reflect on that, because I have to be comfortable with the fact that the failure to give the law, adhere to the law of the case principle in Alexander did in this particular case result in something other than harmless error. Yes. First of all, let me frame the harmless error inquiry. Where we're talking about an instruction that we were entitled to but didn't get, the inquiry is, has the government shown beyond a reasonable doubt that it was harmless? In this case we weren't sandbagged by it. I mean, I can see that you might argue that you were harmed if there were a series of circumstances, like in some of the cases I read, where it really made a difference in how you would go forward with your case. But you didn't like what the judge did, and I can share your grief here. I don't see where you were prejudiced, necessarily, by not getting what you wanted. Well, I can't emphasize how much damage the failure to give this instruction gave. After all, this case is riven with evidence and argument of reckless disregard. At every turn, at every turn where the government tells you this was an actual knowledge case, it was a proof about actual knowledge, in every instance, when you parse the evidence that they point to, what you discover is this. A, each piece of proof was vigorously impeached. And B, in each instance, Judge Block, in each instance the jury was given a reckless disregard half. Indeed, the government stood up in summation and said reckless disregard is an alternative half to conviction here. And they were right. On this record, the evidence of what was not just actual knowledge, but things that fall short of it. Things that McCall should have done better. Things he should have followed up more on. Questions he should have asked again. These, these, this is why counsel needed to be able to stand up as he did in 2006 and say, ladies and gentlemen of the jury, it's not enough. When you're saying the charge was improper, I'm just wondering whether or not you have a theory here that says that by not adhering to the law of the case, he was specifically prejudiced. Let me ask you this other question. Yes. Because, you know, I'm a creature of the Second Circuit and, you know, I'm very familiar with the law there, whether it has any cogency here. I'm not 100% sure, but I know that we are constantly asked by good defense counsel to present in our charge to the jury, second apart from the charge, the defender's theory of defense. And we're told by the Second Circuit that when requested, we have to give it. Could you not have asked here simply, judge, look, I don't agree with the way you're going to charge the jury here, but at least give the jury a theory of defense, namely that you need more than negligence. You could have asked for that. That's precisely what we did. But you asked for it in the context of the charge. I'm talking about the intersection between a charge on the one hand with something which we call a separate part of the instruction called the theory of the defense. In the Ninth Circuit, perhaps in contrast to the Second Circuit where I, too, practice, the Court has said explicitly in a case that we cite in our reply brief that labeling a requested instruction as a theory of defense does not take it out of the ambit of the body of law that says you are entitled to a charge if the evidence supports it and the instruction is correct. Scalia. All I'm suggesting is that you could have done more. You could have asked for a stand-alone, separate explanation to the jury of what your theory of defense was, and I think the judge would be obliged to give it to you if it was a correct statement of the law. Carvin. Well, I think he was obliged to give it to us in any way, in any event. But I notice that my time is actually in the negative numbers now, and I do want to just say a word or two about the equally important and equally devastating instruction that we got instead, because the instruction that we got instead, I respectfully submit, is indefensibly wrong. The instruction that said that a defendant commits an act of reckless disregard when he knowingly acts without regard to the truth or falsity of a statement. And that instruction, I must say, contravenes every case I can find. Scalia. You had a good-faith charge on top of that, did you not? Carvin. And all it told the jury was that mistakes and carelessness are not enough. But what this instruction said, what this instruction told the jury, and we know it puzzled them because they returned a questionnaire saying so, what this instruction said is if you act without regard to whether something is true or false, that is reckless disregard. That, Judge Block, is precisely, precisely what the United States Supreme Court said in the St. Amand case, admittedly in the public figure defamation context, is nothing but heedlessness and does not rise to the level of reckless disregard. There were two counts here, right? There were actually multiple counts, Your Honor. More than two. He was convicted essentially of securities. And there were securities. And accounting counts, right? There were securities counts. There were misrepresentations to auditor's counts. And there was a circumvention of internal controls count. That's correct. And your arguments have not always differentiated or seldom differentiated between the two. And I'm wondering, I can follow the argument as to securities counts, but I'm not entirely sure how these arguments crack when you get to the circumvention count. Well, I'm glad to address that, Chief Judge. The circumvention count, the government points out, did not have an intent to defraud separate element, and therefore, as a formal matter, did not appear to involve reckless disregard. But I think that's a canard.  And the judge correctly told the jury, correctly told the jury, that willfulness is making a statement with a purpose to do something that is wrongful. But then the reckless disregard instruction said a purpose to defraud can be shown by acting without regard to the truth or falsity. And so I would respectfully suggest that any jury, any rational jury that listened to that without regard instruction, would conclude that a defendant who acted without regard to the truth, therefore acted with a purpose to defraud, and I think it follows, acted with a purpose to do something that the law forbids. That is to say, a mistake with respect to reckless disregard taints every count in the case, because every count, including circumvention, had a willfulness component, which is why, Chief Judge Kuczynski, the government was correct when it stood up in summation at Government Excerpts of Records 294 and told the jury in summation that reckless disregard is an alternative path to conviction on all counts. And they were right. But the problem is that because we were denied an instruction that the law of the case, given the nature of the evidence, and because we got an instruction that I respectfully submit, you will find no precedent for anywhere in the country this without regard instruction. Those two errors tainted every count in the case. You also have a hearsay issue, right? We have some evidentiary issues, which we think, by the way, go particularly I wasn't trying to invite you because you're out of time. I wasn't trying to invite you to argue those. We have the briefs, and we Yes. I was really asking the same question. Does evidentiary issues speak to securities counts as well as the accounting count? Absolutely, and indeed Specifically, I'm talking about the conversation that your client had with the COO, where he said, don't worry. Everything's fine. Everything's fine. And that was excluded. I'm just wondering whether that goes to both. I actually think, Your Honor, that it goes to all the counts, as does the so-called dually testimony that we think was improvidently admitted. But I actually think that, as we suggest in our brief, that those evidentiary issues have special force with respect to circumvention. So to the extent the Court has any doubt about the tainting effect of the two wrongful instructions, I actually think the evidentiary errors have their greatest piquancy, if you will, with respect to the circumvention count. I realize I've gone deeply into deficit, and I appreciate the Court's time. And I'm going to beg for... We'll send you a bill for that. I'm going to beg for 30 seconds anyway on rebuttal, if the Court will hear me. I think we'll probably do that. We'll hear from the government now. Do you agree that the judge should have given the same charge on the law of the case principle as articulated in Alexander, and that he was not correct in refusing to do that? No, Your Honor. Amber Rosen from the United States. We believe that the defendant, that the law of the case here did not need to apply because there were changed circumstances, and that those changed circumstances were that the defendant himself had a choice before the second trial to re-litigate the jury instructions or to stand with law of the case. And he chose to re-litigate them. He submitted wholly new jury instructions to the Court prior to the second trial. Did he have to do that in order to preserve his errors for appeal? I'm sorry? Didn't he have to do that under our law in order to preserve his claims for appeal? He did not need to do that in this way, Your Honor. One, he did not make it clear... Did he have to do it, or did he not have to raise the objections that he had raised in the first trial, again in the second trial in order to preserve them for appeal? Yes, but what he should have done is said to the district court, we litigated this before, I want to preserve my same objections, but you need to give the same instructions that you gave before. But that's not what he did. What he did was he submitted new jury instructions. And they were new with respect to numerous things. In other words... Stop. Stop. Their position in the first trial was that the instructions that should have been given, I mean, they were asking for more favorable instructions than that, than were actually given in the first trial. Correct. And if they wanted to preserve that objection for appeal, did they not have to raise that again in the second trial? They would have to. But the way in which they should have done it in order to also preserve law of the case would be to say, you need to give the instructions that were given in the first trial. However, we made a number of objections which were litigated before and which we know we lost and we'd like to preserve those. You know, we raised those again for appeal. But instead what they did was they submitted new instructions. In other words, even the instruction regarding reckless... I'm interrupting again. I used to say I don't mean to interrupt, but when I realize I do mean to interrupt. Is there any question but that the district court judge understood full and well that they wanted the same critical instruction to be given in the second trial? I mean, from my view of the record, there's no question that the judge understood that, decided not to do it. Yes and no. Yes, in that they did make it clear they wanted the instruction from the first trial, but only if, and this is the important distinction, only if they lost on their first request, which was to have no reckless disregard instruction. So they were asking it in... You make it sound so nasty, but isn't that exactly what they're entitled to do? No. How do they lose the law of the case, the rights under the law of the case by re-arguing that the district court erred the first time around and they want to preserve that issue for appeal? I don't understand. I think you have to view it from the district court's perspective. I mean, what did they gain? Did they gain some sort of technical advantage by doing that? I think they did. Magic words, they have to use on incantation? No, Your Honor. That's not our point. Our point is you have to look at it from the district court's perspective. The district court, and it was a new court then who heard the first trial, just received new jury instructions from, submitted new jury instructions from the defense, which included not only changes to the reckless disregard instruction where they dropped a footnote saying trying to preserve the issue for appeal and indicating the first, the instruction given in the first trial, but it was also different as to credibility of witnesses. It was different in that in the elements instruction, it changed the definition of willfulness. It was different in that it took out certain intent language. Excuse me. What difference does that make? You have charging conferences. A lot of things happen during the course of the trial. There's all sorts of limited applications. You go back and forth. Good lawyers preserve all of their rights and they just don't want to take any risk at all in losing an advantage. But when push comes to shove, at the end of the line, there's a charging conference and the judge at that time has to make the call as to what the charge will be and advise counsel accordingly. Exactly. And I just, what I meant to say is that the district court could not have known during that charging conference, with respect to all of the instructions that were submitted by the defendant, which ones were the same from the first trial, which ones were different and just said to preserve, which ones were different and not just meant to preserve, because he didn't make that clear. I'll look at it again. That's not my sense of the record. My sense is that the district court judge knew full and well that they wanted to release that charge again. But let me take it to, let's assume for a moment that the court should have done law of the case. As Judge Block, you indicated before, there still was no harm done. And that's because of Deering. I think we need to look at how the jury was instructed. The jury was told that they needed to find that the defendant acted willfully, knowingly, and with the intent to defraud. The court then said, To defraud someone in connection with the purchase or sale of a security means to make a statement or a representation which is untrue and known to the defendant to be untrue. It then went and defined knowingly as not acting through ignorance, mistake, or accident. It then defined willfully as an act done voluntarily and intentionally with the purpose of undertaking an act that one knows to be wrongful. And the jury had to find the defendant acted knowingly and willfully for every single count. The court then went on to define intent to defraud, and it's there where the reckless disregard instruction was embedded. That was not given with respect to the circumvention count, which is why we say, regardless, that count should not be reversed because there was no reckless disregard instruction given with respect to it. It was just the knowing and willfulness instruction. And Deering said in a fraud case where the jury was instructed that the defendant had to be found knowingly, willfully, to have acted knowingly and willfully with intention to fraud, and the reckless disregard instruction was embedded in the intent to defraud, that because he had to be found to have acted willfully, which was the mens rea, which here was acting intentionally with a purpose of doing an act he knew to be wrongful, that it just didn't matter because that's the mens rea. And defendant himself has said recklessness needs to be deliberate conduct. Well, that willfulness instruction, which the jury had to find defendant. Scalia. I read Deering the same way. I'm going to have to reread it, but that was a civil case in any event. No, it was a criminal fraud case. It was. It wasn't securities fraud. It was health care fraud, but it was a criminal case. So to that extent. It's no different than Deering. Exactly. It's exactly the same as Deering. And also I want to emphasize that the government did not argue a theory of recklessness in its closing argument. Its theory of the case was that defendant knew, and it argued that repeatedly, and it only brought up the yellow flags to the extent that that is what the defendant had raised as his excuse in his interview with Dooley. It was never the government's theory. There was never a yellow flags theory on behalf of the government. The Court had also asked a question regarding the standard of review. And with respect to just the instruction itself and how that should be reviewed, that would be a plain error standard. And the reason for that is because at the time of the jury instructional conference on November 13th, the district court had not at that point come up with a recklessness regarding instruction. It had left one out of its proposed instructions. And the government said you should add one. Then there was the whole discussion with the defense as to what it should be. It was not until after that, excuse me, Friday afternoon, November 13th, that the Court issued what its reckless disregard instruction and said what it would be. The first opportunity the parties had to object to that was Monday morning, November 16th. And at that conference, the defense made no objections to the reckless disregard instruction as actually formulated by the Court. It did write a letter to the Court over the weekend saying, oh, the Court, you forgot the knowing instruction. Include that. And the Court, the morning of the 16th, acknowledged that it would add that. And then it asked the parties, is there anything else? This is at excerpt of, I'm sorry, the record of transcript 2785. And both parties said no. And then again, on the morning of the 17th, the Court asked the parties whether they had any objections to the instructions, and they're reserving the objections. And that's when the defendant also again said no. So given the willfulness instruction that was given and the standard of review, we believe there should be no error as to the reckless disregard instruction. I want to just very briefly address the duly claim, if the Court has any questions with respect to that. Which is that the government did honor its agreement. It told the defense before the first trial it would not elicit the statements, and it did not. There was no agreement regarding the evidence for the second trial. The defense asked whether it would abide by the agreement it had made before. And the government promptly told it that it would not agree to limit the testimony duly. So there was no meeting of the minds. And then the defense did not rely on that. It brought a motion in limine. When it lost that, it cross-examined duly. And then it argued its theory to the jury so that there was no prejudice of any kind. With that, Your Honors, unless you have any further questions, I will submit it. Thank you. Thank you. You may have a minute for rebuttal. May I just make three quick points in rebuttal? Number one, Deering is not on point, and here's why. The instruction on reckless disregard in Deering was correct. We don't dispute that it is the law in the Ninth Circuit that reckless disregard is a form of scienter in criminal securities cases. That's all the Deering jury was told. What our jury was told is that acting without regard to the truth constitutes reckless disregard. There was no such instruction in Deering. Deering tells us nothing as a result. Second, the suggestion was made by government counsel that the government didn't make a reckless disregard argument in summation. Totally false. Let me read you from ER, from the government's excerpts of record 293 to 294. And in the instructions, said the prosecutor, you will find another alternative theory for guilt. And this is a theory based on reckless disregard. If you think that McCall and Lapine acted willfully and with an intent to do something they knew was wrong, but you also think they turned a blind eye to what was going on and what they were doing to aid this fraud, then you make it clear that the defendants were acting with reckless disregard, which would be an alternative theory supporting guilt here. They were basing that on the abundance of evidence that they offered at trial that this was a reckless disregard case. Finally, the government tells you that we failed to preserve our objection to the disregard instruction. All I can tell you is this. At pages ER47 through ER53, and then again at 2748 to 2749 of the record, you will find not one, not two, but three separate places where the district judge articulated his theory of reckless disregard. And he told the defense counsel three times all throughout this colloquy that in his view, if a CEO doesn't know one way or the other if the thing is true or false, that's intent. And the defense said, no, judge, there's an intent component that you're diluting. And then he repeated the hypothetical. And then at the end of the conference, this is what he said. I'm reading now from 2748. He said, if the CEO, quote, has no reasonable basis to believe that the statement is true, the government doesn't have to prove the full extent to which, and then he said, I'm repeating myself now, your point, if there ever is an appeal, is preserved, he said, your points are preserved for appeal, as indeed they are. We made the objection, and the instruction he gave, this without regard. Thank you is code for stop. Okay. Thank you, Your Honor. Thank you. The case is argued. The sentence is adjourned. All rise.
judges: Block, Kozinski, Smith N. R.